[33 NYS3d 67]

In the Matter of LAWRENCE R. GOLDFARB (Admitted as LAW-RENCE ROSS GOLDFARB), a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, June 14, 2016

### APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Raymond Vallejo* of counsel), for petitioner.

*Lawrence R. Goldfarb*, respondent pro se.

### OPINION OF THE COURT

Per Curiam.

Respondent Lawrence R. Goldfarb was admitted to the practice of law in the State of New York by the First Judicial Department on April 15, 1985, under the name Lawrence Ross Goldfarb. Respondent currently resides in California, but his last registered address was within the First Department.

By order entered February 3, 1998 (*Matter of Attorneys in Violation of Judiciary Law § 468-a*, 240 AD2d 106), we suspended respondent from the practice of law, effective March 6, 1998, as part of a mass suspension, pursuant to Judiciary Law §§ 90 (2) and 468-a, until further order of this Court, for failure to file attorney registration statements and pay biennial registration fees. Respondent has not moved for reinstatement and remains suspended. On April 15, 2014, respondent pleaded guilty in the United States District Court for the Northern District of California, to wire fraud in violation of 18 USC § 1343, a federal felony. On August 5, 2014, respondent was sentenced to 14 months' imprisonment and three years of supervised release following his incarceration.

By notice of petition dated March 14, 2016, the Departmental Disciplinary Committee seeks an order pursuant to Judiciary Law § 90 (4) (b), striking respondent's name from the roll of attorneys, upon the ground that he was convicted of a felony as defined by Judiciary Law § 90 (4) (e), specifically wire fraud (18 USC § 1343) and has therefore been automatically disbarred; or, in the alternative, determining that respondent's conviction is a "serious crime" (Judiciary Law § 90 [4] [d]; Rules of App Div, 1st Dept [22 NYCRR] § 603.12 [b]); immediately suspending him from the practice of law (Judiciary Law § 90 [4] [f]); and directing him to show cause before a Hearing Panel as to why a final order of censure, suspension or disbarment should not be made (Judiciary Law § 90 [4] [g]).

The Committee notes that respondent failed to report his conviction as required by Judiciary Law § 90 (4) (c) and 22 NYCRR 603.12 (f). Respondent was served with the Committee's petition at his residence in California, but he has not submitted a response.

Respondent's conviction stems from conduct arising from his activities as the managing partner of Baystar Capital II, L.P. (Baystar), a private investment fund.* Baystar primarily made short-term investments but it also invested in several illiquid, difficult-to-value investments, referred to as "side pockets." When these investments were realized, or deemed realized, gains or losses were allocated to investors' capital accounts.

In 2003, Baystar made an $8.4 million "side pocket" investment in Island Fund LLC. By 2006, the Island Fund side pocket investment had generated a return of more than $16 million to Baystar before deductions for expenses and taxes. Without consulting or informing the investors in Baystar, respondent used "a substantial amount" of those funds to invest in other entities, including some in which he had an economic interest. Respondent accounted for such diversions by, inter alia, creating loan notes between the other entities and the Island Fund side pocket. Further, in response to investor inquiries regarding whether Island Fund had made distributions to Baystar, respondent intentionally failed to disclose that such distributions had been made because he did not want investors to question him about his use of the funds. Additionally, respondent admitted that monthly fund updates sent to investors at his direction failed to disclose the monies remitted to Baystar by Island Fund and respondent's use of such funds.

In March 2011, respondent entered into both a deferred prosecution agreement with the U.S. Attorney's Office and a consent judgment with the SEC whereby he agreed to disgorge approximately $12 million and pay a civil fine of $130,000 pursuant to an agreed upon payment schedule. By decision and order of June 20, 2012, respondent was found in civil contempt for failing to comply with the terms of the consent judgment. The court found that, after making some of the agreed upon payments, respondent spent hundreds of thousands of dollars on personal indulgences, including private air travel and vacations (2012 WL 2343668, 2012 US Dist LEXIS

---

* The factual recitation herein is excerpted from respondent's plea agreement.

85628 [ND Cal, June 20, 2012, No. C 11-00938 WHA]). By subsequent order, the court appointed a receiver to identify and take control of respondent's assets and income, and to sell those assets to pay down the judgment (2013 WL 4504271, 2013 US Dist LEXIS 118942 [ND Cal, Aug. 21, 2013, No. C 11-00938 WHA]). Respondent's failure to make the required payments under the judgment not only resulted in a contempt finding, but it was deemed a breach of his deferred prosecution agreement and the criminal case against him was allowed to proceed. As noted, respondent pleaded guilty to wire fraud in that prosecution.

The Committee contends that "automatic" disbarment is warranted because respondent's federal conviction for wire fraud under 18 USC § 1343, if committed in New York, would constitute the New York felony of scheme to defraud in the first degree (Penal Law § 190.65 [1] [b]).

A conviction of a federal felony does not trigger automatic disbarment, regardless of the seriousness of the felony, unless the federal felony at issue would constitute a felony under New York Penal Law (Judiciary Law § 90 [4] [e]; *Matter of Rosenthal*, 64 AD3d 16, 18 [1st Dept 2009]). The federal felony does not have to be a "mirror image" of a New York felony, but must be "essentially similar" (*Matter of Margiotta*, 60 NY2d 147, 150 [1983]). Thus, we must compare the applicable federal and state felony statutes, and look to our own precedents on this issue to determine if the federal felony is "essentially similar" to a New York felony. If this initial analysis is inconclusive, "essential similarity" can be established by admissions made under oath during a plea allocution, read in conjunction with the indictment or information (*see Matter of Adams*, 114 AD3d 1, 2-3 [1st Dept 2013]; *Matter of Lin*, 110 AD3d 186, 187 [1st Dept 2013]; *Matter of Sorin*, 47 AD3d 1, 3 [1st Dept 2007]).

Although we have previously determined that the underlying felony of wire fraud has no direct felony analogue under New York law (*see Matter of Klein*, 28 AD3d 102 [1st Dept 2006]; *Matter of Mercado*, 1 AD3d 54 [1st Dept 2003]), the Committee contends that admissions made by respondent during his plea allocution, read in conjunction with the information to which he pleaded guilty, satisfy the elements of scheme to defraud in the first degree, a class E felony (Penal Law § 190.65 [1] [b]).

Here, respondent's plea admissions, read in conjunction with the criminal information and related proceedings, satisfy all of

the elements set forth in Penal Law § 190.65 (1) (b). That statute requires that a person engage in an ongoing course of conduct with intent to defraud more than one person and thereby obtains property with a value in excess of $1,000. While respondent did not explicitly admit that he fraudulently and wrongfully withheld property with a value in excess of $1,000 which he was obligated to distribute to the Baystar investors, his plea agreement contains an admission that he diverted "a substantial amount of the net cash available" from the $16 million return generated by Island Fund to other entities in which he had a financial interest. Moreover, in a sentencing memorandum, respondent's counsel in the criminal case conceded that, by not distributing the funds received from Island Fund to investors, "The total gain to [respondent] would be about $1,200,000, at the most," clearly exceeding the Penal Law monetary amount.

In *Matter of Muraskin* (302 AD2d 33 [1st Dept 2002]), we found a federal conviction for wire fraud was "essentially similar" to Penal Law § 190.65 (1) (b) based on the respondent's plea admissions that he took money from settlements on behalf of two clients in excess of amounts to which he was entitled even though there was no explicit admission that the monies at issue exceeded $1,000. As is the case here, it was not until the respondent's sentencing that the total amount of the conversion—$561,000—was first determined on the record. Thus, based upon this record, we find that respondent's federal conviction for wire fraud is "essentially similar" to New York's scheme to defraud in the first degree.

Accordingly, the Committee's petition should be granted and respondent's name stricken from the roll of attorneys and counselors-at-law in the State of New York pursuant to Judiciary Law § 90 (4) (b), effective nunc pro tunc to April 15, 2014.

Tom, J.P., Sweeny, Andrias, Manzanet-Daniels and Webber, JJ., concur.

Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, nunc pro tunc to April 15, 2014.