Matter of Cobb (2022 NY Slip Op 05060)

Matter of Cobb

2022 NY Slip Op 05060

Decided on August 30, 2022

Appellate Division, First Department

Per Curiam 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 30, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Cynthia S. Kern,J.P.,
Angela M. Mazzarelli
Ellen Gesmer
Jeffrey K. Oing
Peter H. Moulton, JJ.

Motion No. 2022-02101 Case No. 2022-02054 

[*1]In the Matter of Timothy F. Cobb, (Admitted as Timothy Fitzgerald Cobb), an Attorney and Counselor-at-Law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Timothy F. Cobb, (OCA Atty Reg. No. 2330868.), Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on February 5, 1990.

Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Raymond Vallejo, of counsel), for petitioner.
Respondent, pro se.

Per Curiam 

Respondent Timothy F. Cobb was admitted to the practice of law in the State of New York by the First Judicial Department on February 5, 1990, under the name Timothy Fitzgerald Cobb. Respondent's registered address is in Georgia but this Court retains jurisdiction over him as the admitting Judicial Department (Rules for Attorney Disciplinary Matters [22 NYCRR 1240.7[a][2]]).
On November 20, 2019, respondent was convicted, upon his plea of guilty, in the United States District Court for the Northern District of Georgia Atlanta Division, of wire fraud in violation of 18 USC § 1343 and filing a false and fraudulent tax return in violation of 26 USC § 7206(1).
On August 19, 2021, respondent was sentenced to imprisonment for one year and one day followed by three years of supervised release and he was directed to make
$488,000 in restitution in connection with his wire fraud conviction.[FN1]
Respondent's conviction stemmed from his ownership and operation of an entity through which he embezzled approximately $500,ooo in investor funds which were supposed to have been put towards the creation of a fantasy football lottery game with several state lotteries. In addition, respondent filed a false federal individual income tax return for the 2014 tax year in which he falsely stated that his adjusted gross income was $37,164 when he knew that it was substantially in excess of that amount as a result of the investment funds he embezzled. Respondent failed to report his conviction within 30 days thereof as required by Judiciary Law § 90(4)(c) and 22 NYCRR 1240.12(a).
Now, by motion, the Attorney Grievance Committee (AGC) seeks an order striking respondent's name from the roll of attorneys, pursuant to Judiciary Law § 90(4)(a) and (b) and 22 NYCRR 1240.12(c)(1), on the ground that he was convicted of a felony as defined by Judiciary Law § 90(4)(e), namely, wire fraud in violation of 18 USC § 1343, and has therefore been automatically disbarred.
By a May 17, 2022 unpublished order, Presiding Justice Acosta directed substitute service pursuant to Judiciary Law § 90(6), and, on May 20, 2022, the AGC served respondent with this motion by first class mail with tracking and certified mail return receipt requested at the federal correctional institute where he is incarcerated but he has not submitted a response.
A conviction of a federal felony does not trigger automatic disbarment unless the federal felony at issue would constitute a felony in New York (Judiciary Law § 90[4][e]; Matter of Rosenthal, 64 AD3d 16, 18 [1st Dept 2009]). For a determination that a federal felony has a New York analog, the federal felony does not have to be a "mirror image" of a New York felony but must be "essentially similar" (Matter of Margiotta, 60 NY2d 147, 150 [1983]). Where the elements of the foreign felony do not directly correspond to the elements of the New York felony, "essential similarity[*2]" may be established by admissions made under oath during a plea allocution, read in conjunction with the indictment or information (see Matter of Adams, 114 AD3d 1, 2-3 [1st Dept 2013]; Matter of Lin, 110 AD3d 186 [1st Dept 2013]; Matter of Sorin, 47 AD3d 1 [1st Dept 2007]).
Although this Court has previously determined that the federal felony of wire fraud has no direct felony analogue under New York law (see Matter of Klein, 28 AD3d 102 [1st Dept 2006]), the AGC argues that admissions made by respondent during his plea allocution, read in conjunction with the indictment to which he pleaded guilty, satisfy the elements of scheme to defraud in the first degree, a class E felony (Penal Law § 190.65[1][b]). We agree.
Respondent was convicted of wire fraud under 18 USC § 1343, a felony, which provides:
"[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both ."
The indictment to which respondent pleaded guilty alleged, in pertinent part:
"[b]eginning in approximately 2014, [respondent] solicited investors for the stated purpose of helping [SB] create a fantasy football lottery game with . . . state lotteries. In late 2014, [respondent] began discussions with two investors who managed a joint business venture On November 13, 2014, [SB], [respondent], and two investors entered into a Convertible Promissory Note Purchase Agreement under which the investors provided two separate loans in the amounts of $100,000 and $400,000.
"According to the Agreement, the victim company had a right to full repayment of the loans if certain conditions were not met prior to June 30, 2015. The Agreement specified that [respondent] and [SB] could only use the $100,000 loan for appropriate business purposes. Additionally, [respondent] and [SB] could only use proceeds from the $400,000 loan after providing written notice that [SB] had contracted with the . . . Lottery Corporation to create a fantasy football lottery league.
"It was part of the scheme and artifice to defraud that [respondent] embezzled investor funds that had been sent to [SB]without the knowledge or consent of his investors.
"It was part of [respondent's] scheme and artifice to defraud that [respondent] falsely told the investors that their funds were being transmitted to a [SB] bank account when in fact he knew that the funds were being transmitted into his personal bank account. From there, [respondent] used these funds to make a variety of personal expenditures, including travel to Barbados, Mexico City, and other locations, restaurants in Atlanta, Miami Beach[*3], and New York, and alimony and other family obligations. [Respondent] knew that he was not permitted to use any of the investors' money for his own personal benefit and that he was required to get their written consent before spending any of the funds contained within [the $400,000 loan].
"During the course of [respondent's] scheme to defraud, he repeatedly provided false information to the investors about the use of their funds and ultimately refused to return any of these funds. After the victims sought to recuperate their funds, [respondent] emailed their attorney fabricated banking documents to give the false impression that their funds had been deposited into a [SB] corporate bank account."
Penal Law § 190.65(1)(b) provides:
"[a] person is guilty of a scheme to defraud in the first degree when he or she: . . . engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud more than one person or to obtain property from more than one person by false or fraudulent pretenses, representations or promises, and so obtains property with a value in excess of one thousand dollars from one or more such persons . . . "
During his plea allocution, respondent, represented by counsel, admitted the previously cited indictment allegations.
The AGC argues that respondent should be deemed automatically disbarred as a result of his wire fraud conviction because his "admissions during his plea allocution, to the effect that he knowingly and willfully engaged in a scheme to defraud — by means of materially false and fraudulent pretenses, and wrongfully obtained funds well in excess of $1,000, correspond to the elements of the New York felony of Scheme to Defraud in the First Degree."
Respondent's plea admissions that he engaged in a systematic, ongoing course of conduct involving false pretenses through which he defrauded investors, and thereby wrongfully obtained approximately $500,000, read in conjunction with the indictment to which he pleaded guilty, correspond to the New York felony of scheme to defraud in the first degree (Penal Law § 190.65[1][b]). Thus, respondent's federal conviction for wire fraud is a proper predicate for automatic disbarment under Judiciary Law § 90(4)(b) and (e) (see e.g. Matter of Goldfarb, 141 AD3d 90, 93-94 [1st Dept 2016]; Matter of Neugeboren, 140 AD3d 28 [1st Dept 2016]; Matter of Starr, 88 AD3d 145 [1st Dept 2011]).[FN2]
Accordingly, the motion should be granted and respondent is disbarred and his name stricken from the roll of attorneys in the State of New York, effective nunc pro tunc to November 20, 2019 (respondent's date of conviction).
All concur. IT IS ORDERED that the Attorney Grievance Committee's motion is granted and pursuant to Judiciary Law § 90(4)(a) and (b), and 22 NYCRR 1240.12(c)(1), respondent, Timothy F. Cobb, admitted as Timothy Fitzgerald Cobb, is disbarred, effective nunc pro tunc to November 20, 2019, based on his conviction of a felony, and his name is stricken [*4]from the roll of attorneys and counselors-at-law in the State of New York, and
IT IS FURTHER ORDERED that the respondent, Timothy F. Cobb, admitted as Timothy Fitzgerald Cobb, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), which are made part hereof, and
IT IS FURTHER ORDERED that pursuant to Judiciary Law § 90, the respondent, Timothy F. Cobb, admitted as Timothy Fitzgerald Cobb, is commanded to desist and refrain from (1) practicing law in any form, either as a principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and
IT IS FURTHER ORDERED that if respondent, Timothy F. Cobb, admitted as Timothy Fitzgerald Cobb, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency.
Entered: August 30, 2022

Footnotes

Footnote 1: The court issued a preliminary restitution order and gave the parties 90 days to come to an agreement as to what adjustment, if any, should be made to the restitution amount (due respondent's counsel's assertion that approximately $12,000 had been recovered). As to respondent's tax conviction, his restitution debt to the IRS was calculated to be $168,000.

Footnote 2: As noted, respondent was also convicted of false and fraudulent tax return in violation of 26 USC § 7206(1). Although the AGC does not make the argument, this conviction would also support automatic disbarment as his admitted filing of a false individual income tax return for the 2014 tax year, read in conjunction with the indictment to which he pleaded guilty, arguably correspond to the New York felony of offering a false instrument for filing in the first degree (Penal Law § 175.35) (see Matter of Doonan, 157 AD3d 44 [1st Dept 2017]).